DECISION AND JUDGMENT
{¶ 1} Appellants appeal the judgment of the Huron County Court of Common Pleas, Juvenile Division, terminating appellants' parental rights to two children and *Page 2 
granting permanent custody to a county Department of Child and Family Services. For the reasons that follow, we affirm.
 {¶ 2} Appellant Ruth R. and Terry H. are the parents of seven-year-old Travin H. and four-year-old Cadin H. Jonathan R. is Ruth R.'s husband and the father, with Ruth, of two children not at issue in this matter.
 {¶ 3} It is not clear from the record what prompted appellee, Huron County Department of Child and Family Services, to become involved, but on June 23, 2006, one of appellee's social workers visited the house of Ruth R.'s mother. The social worker investigated an injury to then two-year-old Cadin, whose faced was bruised. According to the complaint subsequently filed, Ruth R.'s explanation was inconsistent with the injury and both Ruth and Jonathan R. admitted to regular heroin use. Again the record is sketchy, but it appears that at some point it was determined that Ruth R.'s mother was responsible for Cadin's bruises.
 {¶ 4} The social worker removed the children from the home and filed a complaint, alleging that Cadin was abused and dependent and that Travin was dependent. Following a shelter care hearing, the court granted temporary custody of the children to appellee. Appellee placed the children with relatives.
 {¶ 5} On August 3, 2006, the court held an adjudicatory hearing wherein Jonathan and Ruth R. admitted to the allegations of the complaint. Following this, the court adjudicated Cadin to be abused and dependent and Travin to be dependent. On September 7, 2006, the court vacated the August 3 adjudication after Ruth R. tested *Page 3 
positive for opiates and was determined to be under the influence of drugs at the time of her admission. At this hearing, Ruth R. again admitted to the allegations in the complaint, but again tested positive for opiates. The court then set the matter for an evidentiary hearing, following which the court again adjudicated Cadin abused and dependent and Travin dependent. The court appointed a guardian ad litem for the children.
 {¶ 6} Shortly after the children were removed from the home, appellee developed a case plan with the stated goal of reuniting the family. The plan called for Ruth and Jonathan R. to be assessed for substance abuse and follow treatment recommendations, complete parenting classes, and acquire stable employment and housing.
 {¶ 7} The children were initially placed with relatives, but after nine months were placed in a foster home.
 {¶ 8} During relative placement, Ruth and Jonathan R. were afforded a liberal visitation which they appear to have utilized sporadically. When the children went into foster care, visitation was scheduled at a neutral location. This was eventually suspended when Ruth R. repeatedly failed to appear.
 {¶ 9} On April 18, 2008, nearly two years after the children were removed from the home, appellee moved for permanent custody. On August 7, 2008, following a three-day hearing, the trial court granted appellee's motion. From this judgment, appellants now bring this appeal. *Page 4 
 {¶ 10} Appellant Ruth R. sets forth the following three assignments of error:
 {¶ 11} "I. The trial court erred in finding that the Huron County Department of Children Services made a reasonable effort to reunify the minor children with the appellant.
 {¶ 12} "II. The trial court erred in finding that the 12 in 22 months rule set forth in ORC 2151.414 B(1) permitted it to grant permanent custody to the Huron County Department of Children Services.
 {¶ 13} "III. The trial court erred in finding that the children should not be placed with the appellant and that they could not be placed with her in a reasonable period of time."
 {¶ 14} Appellant Terry H. sets forth the following for assignments of error:
 {¶ 15} "1. The trial court erred in finding that the Huron County Department of Children Services made a reasonable effort to reunify the children with the appellant Father.
 {¶ 16} "2. The trial court erred in finding that the 12 in 22 months rule set forth in ORC 2151.414 permitted it to grant custody to the department.
 {¶ 17} "3. The trial court erred in finding that the children should not be placed with the appellant and that they could not be placed with him in a reasonable time.
 {¶ 18} "4. The trial court erred by the deprivation of Terry [H.]s constitutional rights, at nearly all stages of the proceedings." *Page 5 
 {¶ 19} A parent's right to raise his or her children has been characterized as an "* * * essential * * * basic civil right * * *."Stanley v. Illinois (1972), 405 U.S. 645, 651; see, also, Troxel v.Granville (2000), 530 U.S. 57, 65. A parent's right to the custody of his or her child has been deemed "paramount." In re K.H.,119 Ohio St.3d 538, 2008 Ohio 4825, ¶ 40; In re Hayes (1997), 79 Ohio St.3d 46, 48, citing In re Perales (1977), 52 Ohio St.2d 89, 97. "Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In re Hayes at 48, quoting In re Smith (1991),77 Ohio App.3d 1, 16.
 {¶ 20} A judicial decision to terminate parental rights must receive careful scrutiny on review. Before a court may consider whether a child's best interests may be served by permanent removal from his or her family, there first must be a demonstration that the parents are "unfit." Quilloin v. Walcott (1978), 434 U.S. 246, 255; see, also,In re Schoeppner (1976), 46 Ohio St.2d 21, 24.
 {¶ 21} For a child who is not abandoned or orphaned, the Ohio equivalent of parental unfitness is a statutory determination that the child, "* * * cannot be placed with either parent within a reasonable period of time or should not be placed with the parents." R.C. 2151.414(E). The statute directs that this threshold conclusion may only be entered if, following a hearing, the court finds by clear and convincing evidence that one of the predicate conditions enumerated in R.C. 2151.414(E)(1)-(16) exists. See In re William S. (1996),75 Ohio St.3d 95, 97, 1996-Ohio-182, syllabus. When the finding is properly *Page 6 
entered, the court must then determine whether terminating the parent's rights is in the child's best interests. R.C. 2151.414(D). Clear and convincing evidence is that evidence sufficient for the trier of fact to form a firm conviction or belief that the essential statutory elements for a termination of parental rights have been established. In reTashayla S., 6th Dist. No. L-03-1253, 2004-Ohio-896, ¶ 14; Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 22} Alternatively, in 1999, the legislature enacted a provision which bypasses the parental fitness analysis. Am. Sub. H.B. No. 484 (effective March 18, 1999).
 {¶ 23} In material part, R.C. 2151.413(D)(1) provides:
 {¶ 24} "(D)(1) Except as provided in division (D)(3) of this section, if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period pending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child. * * *"
 {¶ 25} R.C. 2151.414(B)(1)(d) provides:
 {¶ 26} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: *Page 7 
 {¶ 27} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 28} "* * *
 {¶ 29} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 30} This is the "12 of 22" provision.
 {¶ 31} Given the strong language of the United States Supreme Court and the Supreme Court of Ohio concerning the necessity of a finding of parental unfitness prior to the termination of a parent's rights, we have voiced our concern for the application of this provision. In reHeaven G., 6th Dist. No. L-06-1362, 2007-Ohio-3313, ¶ 61. At the least, we have held that, if the 12 of 22 provision is the sole basis for a termination, the decision must be reviewed with "exacting scrutiny."In re Sean B., 170 Ohio App.3d 557, 568, 2007-Ohio-1189, ¶ 69.
 {¶ 32} The trial court found that these children had been in appellee's custody for "almost 17 months over the past 22 months." Both parents maintain that this finding was erroneous. *Page 8 
 {¶ 33} Noting this court's concern with the application of the 12 of 22 provision, however, the trial court premised its R.C. 2151.414(B)(1) disposition in the alternative. The court made a 12 of 22 finding, but also engaged in a full R.C. 2151.414(E) analysis, concluding that appellant Ruth R. failed to remedy the conditions that caused the children to be removed from the home (R.C. 2151.414(E)(1)), and that she demonstrated a lack of commitment to the children (R.C. 2151.414(E)(4)). Appellant Terry H., the court found, had also demonstrated a lack of commitment to the children and his repeated incarceration prevented him from providing care for the children (R.C. 2151.414(E)(13)). If either of the findings for each parent is supported by the record, we need not reach the 12 of 22 question.
 Efforts to Reunite {¶ 34} Both appellants maintain that the trial court's finding that appellee provided reasonable case planning and made diligent efforts to reunite the children with the family was erroneous.
 {¶ 35} With respect to appellant Terry H., the finding did not operate to his prejudice. The reasonable planning and diligent efforts requirement adheres only to an R.C. 2151.414(E)(1) finding. The findings with respect to appellant father were pursuant to R.C. 2151.414(E)(4) and (13). Accordingly, appellant Terry H.'s first assignment of error is not well-taken.
 {¶ 36} Concerning appellant Ruth R., at trial she introduced evidence of miscommunication over case plan requirements and visitation. Appellant mother also *Page 9 
obtained an admission from her original social worker that the worker's failure to modify the case plan to conform to a court order was neither in conformity with her training, nor "good social work."
 {¶ 37} The law does not expect perfection in this process, only reasonable planning and diligent efforts to assist remediation of problems. Even though some glitches may have arisen in time, no one seriously contends that the original case plan and its subsequent incarnations were improper or ill conceived. As regards the diligence of the agency's efforts, there was evidence that statements by Jonathan R. to the original social worker were perceived as threatening. While that may have caused the social worker to alter her normal client relationship, there is nothing in the record to suggest that her efforts with respect to Ruth R. were less than diligent. Consequently, there was clear and convincing evidence presented supporting the trial court's finding that appellee's planning was reasonable and its efforts diligent. Accordingly, appellant Ruth R.'s first assignment of error is not well-taken.
 (E) Factors {¶ 38} The Ohio equivalent to a finding that parents are unfit is a statutory conclusion that the child "* * * cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" R.C. 2151.414(E). The court is directed to enter such a finding if, following a hearing, it determines by clear and convincing evidence that one or more of the R.C. 2151.414(E)(1)-(16) conditions exist. *Page 10 
Id. The court found that R.C. 2151.414(E)(1) and (4) existed with respect to Ruth R. and that R.C. 2151.414(E)(4) and (13) applied to Terry H.
 {¶ 39} These provisions provide:
 {¶ 40} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 41} "* * *
 {¶ 42} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 43} "* * *
 {¶ 44} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child. * * *" *Page 11 
 {¶ 45} Although the bruise on Cadin's face was likely the immediate cause of the children's removal from their mother's care, it is fair to conclude that the root cause was Ruth R.'s heroin use. It seems likely that such drug abuse by both Jonathan and Ruth R. at least contributed to Ruth R's unemployment, lack of housing and her inability to protect her children from her own mother. The reunification case plan called for Ruth R. to address her drug abuse, take parenting classes, get a job and find suitable housing.
 {¶ 46} At trial, witnesses testified that Ruth R. sometimes came to visit the children with drugs and paraphernalia on her person and at one point a needle dropped from her pocket while with the children. Her admissions at the adjudicatory hearings were twice nullified when she tested positive for opiates. At trial, she testified that she had completed a drug detoxification program, but failed to offer a certificate of completion or any other corroborating evidence. She also testified that she had been free of drugs for one year at the time of the trial, but she failed to appear for testing three of four times.
 {¶ 47} Ruth R. introduced into evidence at trial an employer earnings statement showing year to date earnings of approximately $1,000, but she had participated in no parenting classes and, at the time of the trial, was living with Jonathan R.'s mother. Her case worker testified that at one point Ruth R. became engaged in the case plan, but that her interest seemed to wane when her most recent child was born.
 {¶ 48} Viewing the record as a whole, we must conclude that there was sufficient evidence submitted by which the trial court could have properly found that Ruth R. had *Page 12 
failed continuously and repeatedly to remedy the conditions that caused the children to be removed from the home. This finding alone is sufficient to support a conclusion that the children cannot now or should not be placed with Ruth R. within a reasonable time. Accordingly, appellant Ruth R.'s third assignment of error is not well-taken. Her second assignment of error is moot.
 Lack of Commitment {¶ 49} Appellant Terry H. contests the trial court's findings that he "* * * demonstrated a lack of commitment toward the children by failing to regularly visit or communicate with the children when able to do so" and that his "* * * repeated incarceration has prevented him from providing care for the children." Terry H. maintains that these findings are unsupported by the evidence and that, in any event, he was denied his rights "* * * at nearly every stage of the * * * proceeding[s]."
 {¶ 50} When the children were removed from the home, Terry H. resided in Newark, Ohio, some distance from the children's Plymouth, Ohio home. A copy of the abuse and dependency complaint was sent to him by certified mail. Court records contain a certified mail receipt endorsed with what appears to be Terry H's signature. Nevertheless, Terry H. did not appear at any of the numerous hearings on this matter until May 31, 2007, nearly a year after the original complaint.
 {¶ 51} Although he talked to a children's services investigator and the children's guardian ad litem about custody or placement of the children with him, he never took any concrete steps to achieve this. His next appearance was at the hearing on appellee's *Page 13 
motion for permanent custody that began on July 28, 2008. Even though the trial court expressly granted him visitation privileges at the 2007 hearing, at no time that the children were in appellee's custody did Terry H. exercise that privilege.
 {¶ 52} At trial, Terry H. testified that he never received the initial complaint and the signature on the certified mail receipt was not his. He complains that he was not notified of subsequent proceedings and was not appointed counsel until just before the permanent custody hearing. The persistent lack of notice throughout the course of the case, he argues, denied him a meaningful opportunity to be heard, resulting in a depravation of his right to due process. Moreover, he suggests, the court's failure to afford him counsel at "all stages of the proceedings" as guaranteed by R.C. 2151.352 and Juv. R. 4 additionally violated his due process rights.
 {¶ 53} The record clearly reflects that the trial court advised Terry H. of his right to counsel at his first appearance on May 31, 2007. The court gave Terry H. specific instructions about how counsel could be obtained. There is nothing in the record to suggest that Terry H. made any effort at that time to obtain counsel. As a result, he cannot now be heard to complain that he was not timely provided counsel.
 {¶ 54} With respect to an absence of notice to Terry H. throughout the proceedings, his testimony that the signature on the certified mail receipt was not his is contradicted by a guardian ad litem's report filed shortly after the complaint that recounts a call to her from Terry H. seeking information on custody. It is clear that at that point Terry H. had actual knowledge of the proceeding. In any event, a trier of facts may *Page 14 
believe or disbelieve the testimony of any witness. State v. Antill
(1962), 176 Ohio St. 61, 67. In this matter, the trial court believed the validity of the signature on the two year old mail receipt over Terry H.'s trial denial of its authenticity. We find no reason to disturb that finding.
 {¶ 55} Flowing from this is a determination that Terry H. had notice of the pendency of this case and had a concomitant duty to advise the court of any address changes that might interfere with his continued receipt of notices. Robb v. Smallwood, 165 Ohio App.3d 385, 389,2005-Ohio-5863, ¶ 11. Having failed to do this, he cannot now be heard to complain that lack of notice operated to his prejudice. Accordingly, appellant Terry H.'s fourth assignment of error is not well-taken.
 {¶ 56} With respect to the merits of the R.C. 2151.414(E)(4) and (13) findings, it is uncontested that during the entire proceeding Terry H. never once visited his children. This is one of the statutorily enumerated events equated with a parental lack of commitment. R.C. 2151.414(E)(4). Moreover, the evidence presented at trail was that Terry H. served multiple periods of incarceration just during the pendency of the action. When asked at trial to state his criminal history, Terry H. was unable to recall it all. Consequently, there was clear and convincing evidence before the court supporting R.C. 2151.414(E)(4) and (13) findings and a determination that the children cannot now, nor with a reasonable time, be placed with their father. Accordingly, appellant Terry H.'s third assignment of error is not well-taken. His second assignment of error is moot. *Page 15 
 {¶ 57} On consideration whereof, the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law; and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Arlene Singer, J., William J. Skow, P.J., Thomas J. Osowik, J., CONCUR. *Page 1