**In re ALYSSA C., a.k.a. L.**

[Cite as *In re Alyssa C.,* 153 Ohio App.3d 10, 2003-Ohio-2673.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–02–1360.

Decided May 23, 2003.

---

**12**

Asad S. Farah, for appellants.

David T. Rudebock, for appellee.

SINGER, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating parental rights. Because we conclude that appellants were improperly denied counsel, we reverse.

{¶ 2} Alyssa C., a.k.a. L., was born June 13, 2001. Two days later, appellee, Lucas County Children Services Board ("LCCSB"), filed a complaint alleging that Alyssa was a dependent child. The complaint stated that Alyssa's mother, appellant Krista L., then 18 years old, was also the mother of three other children who were the subject of a prior neglect and dependency complaint. According to the complaint, police took Krista's older children when she failed to pick them up at a babysitter because Krista was incarcerated after having been arrested for alcohol consumption. Legal custody of two of these three children was awarded to their fathers; custody of the third child was awarded to a grandmother. Additionally, the complaint alleged that Alyssa's father, appellant Salome G., was incarcerated out of state.

{¶ 3} With respect to Alyssa, the complaint alleged that her mother was delinquent in following the case plan set for the older three children because she had failed to appear for two substance-abuse assessments and was dismissed from parenting classes for nonattendance.

{¶ 4} The trial court granted appellee temporary custody of Alyssa and appointed counsel for her mother and a guardian ad litem for the child.

Following a hearing, Alyssa was adjudicated a dependent child. On May 22, 2002, appellee moved for permanent custody of Alyssa, citing both appellants' failure to comply with various elements of the case plan as grounds for this action.

{¶ 5} The matter proceeded to a final hearing on appellee's motion to terminate appellants' parental rights. Neither of appellants appeared at the hearing. At the outset of the hearing, appellant mother's appointed attorney sought leave to withdraw as counsel, stating to the court that it had been several months since he had had contact with her. The court granted the motion. The hearing continued ex parte.

{¶ 6} During the hearing, Krista's caseworker testified that Krista had completed her drug-and-alcohol assessment. According to the caseworker, no services were required as a result of the assessment, but it was recommended that Krista submit random urine screens. The two screens that Krista did submit had been "clean," but she had not appeared several times when requested. The caseworker also reported that Krista had attended a few parenting classes but never completed the course.

{¶ 7} With respect to the father, the caseworker testified that he lived in Mississippi and was unwilling to return to Ohio because of "outstanding warrants" here. The caseworker testified that in a telephone conversation that the father had exhibited an interest in Alyssa but had not followed through. His only contact with the child was with gifts sent to the father's sister who was taking care of Alyssa.

{¶ 8} Following the hearing, the magistrate found that "pursuant to ORC 2151.353(A), and ORC 2151.414(E)(1), (2), (4), (10), (14), and (16) by clear and convincing evidence the minor child cannot and should not be placed with either parent within a reasonable period of time * * *." The magistrate then ordered that appellants' parental rights be terminated and that permanent custody of Alyssa be awarded to LCCSB. On review, the trial court approved the magistrate's findings and conclusions and adopted the magistrate's order as its own.

{¶ 9} From this judgment, appellants bring this appeal, setting forth the following as their sole assignment of error:

{¶ 10} "That the juvenile court erred in that the evidence lacked the clear and convincing standard that Krista [L.], mother and Salome [G.], father, have not shown substantial improvement and would not be able to adequately parent in the near future as required by O.R.C. 2151.414."

### Sufficiency of evidence

{¶ 11} Any consideration of procedures designed to terminate parental rights begins with the recognition of the unique sanctity that our culture and our law

place on the parent/child relationship. *In re Sara H.* (Dec. 16, 1994), Lucas App. No. L–94–116, 1994 WL 700629. It is well recognized that the right to raise a child "is an 'essential' and 'basic' civil right." *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's interest in the care, custody, and management of his or her child is "fundamental." Id.; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The permanent termination of a parent's rights has been described as " 'the family law equivalent to the death penalty in a criminal case.' " *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. "Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' " Id.

{¶ 12} Ohio courts have long held that a parent who is a suitable person has a paramount right to the custody of his or her child. *Clark v. Bayer* (1877), 32 Ohio St. 299, 310; *In re Perales* (1977), 52 Ohio St.2d 89, 97, 369 N.E.2d 1047; *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. For this reason, a court "may not award custody to [a] nonparent without first making a finding of parental unsuitability * * *." *In re Perales,* syllabus. Such a requirement still exists, *In re Sara H.,* supra, but has been statutorily defined.

{¶ 13} R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that (1) the child "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," R.C. 2151.414(B)(2), and (2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B)(1). The statute sets forth a list of sixteen predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. 2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B), and will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. *In re Forrest S.* (1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307; *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. A parent's failure to adhere to or complete a case plan is not, in itself, a ground for the termination of parental rights.

{¶ 14} In this matter, the trial court found that R.C. 2151.414(E)(1), (2), (4), (10), (14), and (16) had been proved. These provisions provide:

{¶ 15} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 16} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code;

{¶ 17} "* * *

{¶ 18} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶ 19} "* * *

{¶ 20} "(10) The parent has abandoned the child.

{¶ 21} "* * *

{¶ 22} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶ 23} "* * *

{¶ 24} "(16) Any other factor the court considers relevant."

{¶ 25} Before considering the evidence which might support one or more of these findings, we must note that review of this case has been particularly disconcerting. Documents in the record were misnumbered or filed out of order. Exhibits were misplaced. Transcripts of hearings were ordered but not produced. Audiotapes of entire hearings were lost. Moreover, although the magistrate's report that was adopted by the trial court contains findings and conclu-

sions, it makes no effort to link which findings support which conclusions with respect to which parent.

{¶ 26} With respect to the R.C. 2151.414(E)(1) finding, we cannot ascertain the exact reason this child was removed from her mother's care. The original dependency complaint states that three other children were removed from their mother's custody. We glean from various pieces of testimony that the precipitating event of the removal of the older three children was because appellant mother left them with a babysitter. Apparently, when the mother was arrested for some sort of alcohol-related offense, she did not pick up the children and the babysitter notified authorities. If something else was going on, it is not in the record of this case and the record of the cases of the older three children were never been made part of this record.

{¶ 27} What is in the record is the testimony that appellant mother was ordered to take an alcohol-and-substance-abuse assessment, which she apparently completed. Although the report of that assessment was not included in the record of this case, appellant's caseworker testified that the only recommendation coming out of the assessment was that the mother provide random urine specimens. Appellant provided two specimens out of five required. Both revealed no evidence of alcohol or substances of abuse.

{¶ 28} In any event, whatever reason Alyssa's three older siblings were removed from their mother's custody, absent inclusion of those case records in this case, we cannot ascertain why Alyssa was taken from her mother immediately after she was born. Without clear knowledge of why Alyssa was placed outside her home, it is not possible to sustain a finding that appellant mother failed to remedy the conditions that caused such removal.

{¶ 29} We find no evidence in the record that either appellant is mentally ill, emotionally unstable, mentally retarded, disabled, or clinically depressed. Consequently, a finding pursuant to R.C. 2151.414(E)(2) cannot be sustained.

{¶ 30} Concerning the R.C. 2151.414(E)(14) finding (unwillingness to provide necessities), this could relate to appellant father who, notwithstanding the magistrate's finding to the contrary, did establish paternity but never supported Alyssa. There was no evidence that appellant mother was unwilling to provide for Alyssa. The same is true with respect to the (E)(10) finding (abandonment). Alyssa was taken from appellant mother. Arguably, though, appellant father's refusal to return to Ohio because of outstanding warrants might be construed as an abandonment by him.

{¶ 31} The R.C. 2151.414(E)(16) (other factor) finding is unsustainable because the court failed to articulate what "other factor" the court deemed relevant. While we recognize that the legislature added this catchall provision to the

statute to afford the court greater latitude in its consideration in permanent custody cases, we do not believe that the legislature intended or the Constitution allows a wholly unfettered right to make the determination. To hold that such a right existed would negate the remainder of section (E). Consequently, for an appellate court to review an (E)(16) finding, it must know what "other factor" the court feels can be a substitute for one of the (E)(1) through (15) findings.

{¶ 32} Remaining is the R.C. 2151.414(E)(4) finding (lack of commitment). Appellant father's refusal to return to Ohio could be construed as a lack of commitment or a failure to visit or communicate with Alyssa. Additionally, with respect to this finding, there was testimony from appellant mother's caseworker that the mother seldom visited the child and did not appear to "bond" with her. Moreover, according to the caseworker, appellant mother moved frequently, often living with friends or relatives. This testimony was uncontroverted.

Waiver

{¶ 33} Ordinarily, at this point, we would rule whether the evidence did or did not support the court's findings and conclusions. However, in this matter, we do not need to reach that conclusion because neither appellant objected to the magistrate's decision from the dispositional hearing.

{¶ 34} Juv.R. 40(E)(3)(b) provides that a party on appeal may not assign as error the juvenile court's adoption of the magistrate's findings or conclusions "unless the party has objected to that finding or conclusion under this rule." Consequently, a failure to object to a magistrate's decision constitutes a waiver of issues which might have otherwise been raised on appeal. *In re Etter* (1998), 134 Ohio App.3d 484, 492, 731 N.E.2d 694, citing *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099.

{¶ 35} An exception to this rule is the application of the plain error doctrine. "The doctrine originated in the criminal law and is embodied in Crim.R. 52(B): 'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' Although its roots are in the criminal law, the Ohio Supreme Court has recognized application of the doctrine in civil cases as well." *In re Etter*, supra. This doctrine is applicable to a waiver imposed due to the failure of a party to object to a juvenile court magistrate's decision pursuant to Juv.R. 40(E)(3)(b). Id.; *In re Morris* (Oct. 16, 2000), Butler App. No. CA2000–01–001, 2000 WL 1530878. However, application of the doctrine should be extremely rare, "involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *Goldfuss v. Davidson,* 79 Ohio St.3d at 122–123, 679 N.E.2d 1099.

{¶ 36} In this matter, although we see significant difficulties in the evidence supporting many of the magistrate's findings and conclusions, we do not see the type of egregious occurrence that might bring appellants' assigned error into the plain error doctrine. Accordingly, appellants' assignment of error is not well taken.

## Withdrawal of Counsel

{¶ 37} Even though we have determined that appellants' assigned error is not sufficiently supported to invoke the plain error doctrine, the doctrine also permits an appellate court to notice errors not brought to the attention of the court by way of an assignment of error. *In re Solis* (1997), 124 Ohio App.3d 547, 550, 706 N.E.2d 839, citing App.R. 12(A) and *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 301, 313 N.E.2d 400. The rule has been employed specifically to consider a juvenile party's lack of counsel at a dispositional hearing. *In re Solis* ; *In re M.L.R.*, 150 Ohio App.3d 39, 2002-Ohio-5958, 779 N.E.2d 772.

{¶ 38} In *M.L.R.*, trial counsel appeared at a dispositional hearing and advised the court that he had had no contact with his client since the adjudicatory hearing and that his client was not available or cooperative. Counsel then sought and was granted leave to withdraw as counsel. The hearing continued ex parte until the client arrived late. At that point, the client was told that he was without counsel but could "act as your own counsel." *M.L.R.* at ¶ 9.

{¶ 39} Citing R.C. 2151.352 and Juv.R. 4(A), the *M.L.R.* court found that the juvenile court committed plain error when it allowed trial counsel to withdraw the day of the dispositional hearing. The court noted that Juv.R. 4(F) permits an attorney to withdraw from representation "only with the consent of the court upon good cause shown." Moreover, the court observed, the Cuyahoga County local rule (which is equivalent to Lucas County Court of Common Pleas, Juv.R. 7.2) prohibits an attorney from being discharged or withdrawing less than 14 days before the trial date absent good cause shown. Additionally, the *M.L.R.* court cited DR 2–110(A)(2), which provides that a lawyer may not withdraw until he or she has "taken reasonable steps to avoid foreseeable prejudice to the rights of his client * * *." The *M.L.R.* court concluded that the trial counsel's simple assertion that a client was "uncooperative" was insufficient to demonstrate that he should be allowed to withdraw, especially on the day of the dispositional hearing:

{¶ 40} "The court here did not take any action to prevent prejudice to appellant as a result of his attorney's withdrawal. Appellant did not choose for his attorney to withdraw. He was not even present when the attorney asked for and was given leave to withdraw. Therefore, the court had a special obligation to protect appellant's rights. Yet the court did not even consider appointing new

counsel or continuing the hearing. Instead, it allowed the dispositional hearing to go forward, ex parte, until appellant arrived. * * *

{¶ 41} "Appellant had the right to counsel at all stages of the proceedings [see R.C. 2151.352 and Juv.R. 4(A) ], and never waived that right. To allow counsel to withdraw from representation on the day of the dispositional hearing, in his client's absence, without prior motion or notice to his client, without a demonstration to the court that the client had rendered it unreasonably difficult for the attorney to represent him, and without appointing new counsel and/or continuing the hearing, and to require the client to proceed immediately without representation, was both erroneous and prejudicial." *M.L.R.* at ¶ 21–22.

{¶ 42} In the present matter, no counsel was ever appointed to represent appellant father. Appellant mother's counsel appeared at the dispositional hearing and advised the court that she had not contacted him for more than six months. Because of this lack of communication, counsel sought and was granted leave to withdraw. The hearing continued ex parte and resulted in the order terminating appellants' parental rights.

{¶ 43} In *M.L.R.*, the attorney seeking leave to withdraw justified the request by characterizing his client as "uncooperative" and advised the trial court that he had no contact with the client since the adjudication hearing. The *M.L.R.* appellate court analyzed this justification as follows:

{¶ 44} "Based only on counsel's assertion that appellant was uncooperative, the [juvenile] court could not assess whether it was appropriate to allow counsel to withdraw, and, if so, whether to appoint new counsel. An attorney may ethically withdraw when his or her client '[b]y other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.' DR 2–110(C)(1)(d). Before the court can decide whether alleged uncooperativeness has made it unreasonably difficult for an attorney to represent the client effectively, it must ascertain the source of the uncooperativeness.

{¶ 45} "For example, by lack of cooperation, the attorney may actually mean lack of communication. This appears to be the case here, given counsel's assertion that he had not been in contact with his client since the adjudication hearing. However, communication is a two-way street. An attorney's assertion that his or her client has not contacted the attorney does not demonstrate that the client has been 'uncooperative' unless the attorney has also affirmatively attempted to contact the client and has been unable to reach him or her. If neither counsel nor the client has attempted to contact each other, they have simply not communicated; it cannot be said that the client has made it unreasonably difficult for the lawyer to represent him." *M.L.R.* at ¶ 16–17.

{¶ 46} In the present matter, appellant mother's counsel told the trial court that she had not attempted to contact him and that he had been unable to contact her. Yet, only a few minutes later appellant mother's caseworker testified that she had spoken to appellant mother two days prior to the dispositional hearing. In our view, this brings into question the tenacity of counsel's attempted communication.

{¶ 47} In any event, it is clear that both appellants were denied their statutory right to representation at the dispositional hearing. To proceed without representation for a party in such a circumstance is plainly erroneous.

{¶ 48} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed and vacated. The prior temporary orders are reinstated. This matter is remanded to said court for further proceedings consistent with this decision. Costs to appellee.

Judgment reversed
and cause remanded.

HANDWORK, P.J., concurs.

KNEPPER, J., dissents.