DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating a father's parental rights to his six-year-old daughter and granting permanent custody of the child to a children's services bureau. Because we find that there was sufficient evidence to support an R.C. 2151.414(E)(4) finding, we affirm.
 {¶ 2} On March 13, 2002, a trial court magistrate issued an ex parte custody order on the petition of appellee, Lucas County Children Services Board. The court ordered appellee to take immediate custody of then four-year-old Tashayla S. and her younger half-sister, Yolanda. Appellee alleged that the children's mother, who is "intellectually limited," had lost permanent custody of two other children, allowed a group of teenage boys into her home and that these boys ate the food intended for the children.
 {¶ 3} The following day appellee filed a dependency and neglect complaint, reiterating the initial allegations and stating that Tashayla's mother had previously failed to seek regular medical attention even though Tashayla had previously been diagnosed with failure to thrive syndrome and reactive airway disease. More recently, Tashayla reported that she had been "messed with by a bad boy," which appellee took to mean that she had been sexually molested. Both children were eventually adjudicated neglected and dependent with temporary custody awarded to appellee. On February 6, 2003, appellee moved for permanent custody of both children.
 {¶ 4} Appellant, Randall M., is Tashayla's father. Shortly after Tashayla and her sister were removed from their mother's home, appellant was advised of the pending action and made a party. According to the judgment entry from the neglect/dependency adjudication, appellant provided child support for his daughter, but neither had regular contact with her nor, at the time, did he believe that he was able to care for her. Appellant, however, was included in the case plan appellee prepared for Tashayla after the adjudication. The plan called for him to complete a diagnostic assessment, attend parenting classes, and have supervised visitation at the agency with Tashayla.
 {¶ 5} Appellant refused parenting classes and, at least initially, participating in assessment. His position throughout was that he had not been convicted, or even accused, of misconduct with respect to Tashayla and he should not be treated as if he had. For this same reason, appellant refused agency-supervised visitation. Instead, on June 12, 2002, appellant moved for a visitation and companionship order. This motion was eventually denied. At the permanent custody hearing, appellant was the only party to contest termination of parental rights for Tashayla.
 {¶ 6} At trial, appellee's caseworker testified that appellant had refused to engage in any of the case plan services offered and, until only recently, refused diagnostic assessment. Even though appellant had recently undergone assessment, the caseworker reported, he had refused to release the results to appellee. According to the caseworker, appellant had responded similarly in cases involving three other children. With respect to Tashayla, never during the period she was in appellee's custody had appellant visited her.
 {¶ 7} For his own part, appellant testified that had little contact with his daughter due in large part to the visitation restrictions established by appellee. His position was that he had not been convicted of anything or broken any laws; therefore, he should not be required to participate in services required for those who had. This was also the reason appellant gave for not attending supervised visitation with Tashayla at any time while she was in appellee's temporary custody. On cross-examination, appellant admitted to prior domestic violence and concealed weapons convictions.
 {¶ 8} At the conclusion of the hearing, the trial court entered findings, pursuant to R.C. 2151.414(E)(1), (4), (11) and (16), that Tashayla, "* * * cannot and should not, be placed with either parent within a reasonable period of time, and that * * * an award of permanent custody to [appellee was in] the [child's] best interest." On these findings the court terminated appellant's parental rights and granted permanent custody of Tashayla to appellee.
 {¶ 9} From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:
 {¶ 10} "I. The trial court erred in finding that the Lucas County Children Services Board had made a reasonable effort to reunify the minor child with appellant.
 {¶ 11} "II. The trial court erred in granting Lucas County Children Services Board's motion for permanent custody as it was against the manifest weight of the evidence to grant it."
 {¶ 12} We shall discuss appellant's assignments of error together.
 {¶ 13} Ohio courts have long held that a parent who is a suitable person has a paramount right to the custody of his or her child. Clark v. Bayer (1877), 32 Ohio St. 299, 310; In rePerales (1977), 52 Ohio St.2d 89, 97; In re Murray (1990),52 Ohio St.3d 155, 157. For this reason, a court, "* * * may not award custody to [a] nonparent without first making a finding of parental unsuitability * * *." In re Perales, syllabus. Such a requirement still exists, In re Sara H. (Dec. 16, 1994), 6th Dist. No. L-94-116, but has been statutorily defined.
 {¶ 14} R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," R.C.2151.414(B)(2), and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B)(1). The statute sets forth a list of sixteen predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); In reWilliam S. (1996), 75 Ohio St.3d 95, 1996-Ohio-182, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. 2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B), and will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. Inre Forest S. (1995), 102 Ohio App.3d 338, 345; Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 15} In this matter, the trial court found that R.C.2151.414(E)(1), (4), (11) and (16) were proven. In material part, these provisions provide:
 {¶ 16} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 17} "* * *
 {¶ 18} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 19} "* * *
 {¶ 20} "(11) The parent has had parental rights involuntarily terminated * * * with respect to a sibling of the child.
 {¶ 21} "* * *
 {¶ 22} "(16) Any other factor the court considers relevant."
 {¶ 23} Here, the finding that parental rights for a child's sibling have previously been involuntarily terminated only reflects on Tashayla's mother. No evidence was presented that appellant's parental rights to other children had ever been terminated.
 {¶ 24} Concerning the R.C. 2151.414(E)(16) "any other factor" finding, we have held that for this catchall provision to pass scrutiny, the trial court must explain with specificity what other factor the court deems comparable to one of those enumerated in sections (E)(1) through (15) of R.C. 2151.414. Inre Alyssa Nicole, 153 Ohio App.3d 10, 17, 2003-Ohio-2673, at ¶32. Here, the trial court has failed to make such an explanation, so we need not consider this issue.
 {¶ 25} With respect to the trial court's finding pursuant to R.C. 2151.414(E)(1) that there was a failure to remedy the conditions which caused Tashayla's removal from her home, Tashayla did not reside with appellant when she was removed. Consequently, although there might be some attenuated argument that appellant should have known of and intervened in those conditions, this finding appears to be directed to Tashayla's mother, not appellant. Since this is the only applicable factor which requires reasonable case planning and diligent reunification efforts and it is inapplicable to appellant, his first assignment of error is not well-taken.
 {¶ 26} Finally, there is R.C. 2151.414(E)(4). The evidence clearly and convincingly discloses that not only did appellant fail to regularly visit or communicate with Tashayla, he literally refused to do so. The reason for this refusal was appellant's legalistic notion that since, in his own mind, he was faultless with respect to the conditions from which Tashayla was removed, he should not have been required to have supervision during visitation. The wrong of this indignity, apparently, could only be remedied by having no contact with his daughter for the more than a year that she was in appellee's custody: the court refuses to accept this disingenuous argument.
 {¶ 27} Appellant is hardly blameless concerning the conditions that caused Tashayla's removal. Just because a parent is not a custodial parent, does not absolve him or her from being aware of the conditions to which his or her child is subjected. If appellant was aware of the conditions under which Tashayla lived, he must burden some of the culpability for not attempting to remedy those conditions. If he did not know of these conditions, can it be for any other reason than that he was already neglecting his duty to visit and communicate with his daughter before appellee's involvement with the family?
 {¶ 28} The trial court did not accept appellant's excuse, nor do we. During cross-examination at trial, appellant did not know how old his daughter was or what her likes or dislikes were. The reality was that during Tashayla's six years to that point, appellant had virtually no contact with her. During the more than one year Tashayla was in appellee's custody, appellant did not once visit her. In our view, this is sufficient evidence to find clearly and convincingly that appellant demonstrated a lack of commitment toward Tashayla by failing to regularly visit and communicate with her. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 29} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.
Judgment Affirmed.
Handwork, P.J., Pietrykowski, J., and Singer, J., concur.