[Cite as *In re T.S.*, 2015-Ohio-4885.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re T.S.

Court of Appeals No. L-15-1158

Trial Court No. JC 15245809

**DECISION AND JUDGMENT**

Decided: November 24, 2015

* * * * *

James J. Popil, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} This is an appeal from a judgment by the Lucas County Court of Common Pleas, Juvenile Division, which terminated parental rights and responsibilities as to mother-appellant, K.F., and awarded permanent custody of the child, T.S., to the Lucas County Children's Services Board ("CSB").

**{¶ 2}** Appellant filed a pro se notice of appeal and was appointed appellate counsel. The attorney has filed a brief stating that he was unable to find any error entitling appellant to relief. Counsel requests that this court independently review the record and to permit him to withdraw from the case under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

**{¶ 3}** We have reviewed the record. We agree that there is no meritorious issue on appeal. For the reasons set forth below, we affirm the judgment of the juvenile court to terminate appellant's parental rights and to grant permanent custody of T.S. to CSB.

## II. Facts and Procedural History

**{¶ 4}** Appellant is the mother of T.S., a baby girl, who was born on November 14, 2014. At the time of delivery, appellant and T.S. both tested positive for cocaine.

**{¶ 5}** On November 18, 2014, CSB filed a complaint in dependency, neglect, and abuse, requesting that the juvenile court terminate appellant's parental rights and grant permanent custody of T.S. to the agency. A shelter care hearing was held that same day, and CSB was granted interim temporary custody. Appellant did not attend the shelter care hearing. Appellant also failed to attend a pretrial conference on March 19, 2015.

**{¶ 6}** The father of T.S. is not known. Two potential fathers were ruled out through genetic testing.

**{¶ 7}** The adjudicatory and dispositional hearings were held together, on April 22, 2015. Again, appellant did not appear. The record indicates (1) that appellant received personal service of the notice of hearing; (2) that she told her caseworker she did not plan

2.

to attend the hearing; and (3) that she was advised to contact her trial counsel. Trial counsel, who also represented appellant on a concurrent matter, stated that he and appellant had not communicated with regard to T.S. Based upon these factors, the juvenile court found that appellant waived her right to counsel, and it permitted trial counsel to withdraw from the case.

{¶ 8} Testifying during the adjudicatory phase was Todd Switala, who is an investigative caseworker for CSB. Switala visited appellant and T.S. while they were in the hospital. At the time, appellant admitted to Switala that she had used cocaine three days before T.S. was born. Switala also testified that T.S. was observed experiencing tremors before her discharge.

{¶ 9} Christine DeSilvis, appellant's caseworker, began working with appellant in September of 2013, following the birth of a son, Ka.F. When he was born, Ka.F. tested positive for cocaine and marijuana. On March 17, 2015, a month before the hearing in the instant case, the juvenile court awarded permanent custody of Ka.F. to CSB based upon appellant's drug abuse and issues pertaining to her mental health, parenting, and housing.

{¶ 10} At the conclusion of DeSilvis' and Switala's testimony, the juvenile court adjudicated T.S. to be dependent and abused.

{¶ 11} Donita McGuire testified during the dispositional phase. McGuire is a team leader and drug counselor from Unison Behavioral Health. McGuire testified as to

appellant's refusals to provide a drug screen, poor attendance, negative attitude while in group therapy sessions and her ultimate unsuccessful discharge from Unison.

{¶ 12} DeSilvis testified that appellant has a long history of significant substance abuse, mental health, parenting and housing problems. Appellant's participation in services was inconsistent and, at the time of hearing in the instant case, she was living at the YWCA, having been evicted from her apartment in February of 2015.

{¶ 13} Documentary and testimonial evidence was also received demonstrating that, besides Ka.F. and T.S., appellant lost permanent custody of four other children, and legal custody of one child, born between 2002 and 2012, while living in Michigan.

{¶ 14} The guardian ad litem ("GAL"), Diana Bittner, served as the GAL to T.S. and Ka.F. Bittner testified that she believed it was in T.S.'s best interest to terminate appellant's parental rights and to award permanent custody to CSB. Bittner's GAL report was admitted into evidence and mirrors her testimony.

{¶ 15} On May 13, 2013, the juvenile court awarded permanent custody of T.S. to CSB.

### III. Appellant's Notice of Appeal

{¶ 16} Appellant filed a four page, handwritten notice of appeal on June 5, 2015. In it, she stated that she was making an earnest effort to heal, emotionally and physically. Appellant claimed she was active in treatment, had been sober for two months, that she was getting married, had obtained housing and was employed.

4.

## IV. Counsel's Ander's Motion

{¶ 17} Appellant was appointed appellate counsel, who filed a memorandum to withdraw from the case for lack of a meritorious, appealable issue under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493*; see also State v. Duncan,* 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978). Counsel states that, based upon his review of the record, he has determined that the appeal is wholly frivolous.

{¶ 18} In *Anders*, the court set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. The court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. *Anders* at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. *Id.*

{¶ 19} In this case, counsel set forth a potential ground for appeal, mailed a copy of the memorandum to appellant and advised her of her right to file her own appellate brief. Appellant has not filed an additional brief or otherwise responded.

{¶ 20} Once the above requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that it is, the court may grant counsel's request to withdraw and dismiss the appeal without violating constitutional

5.

requirements or it may proceed to a decision on the merits if state law so requires. *Id.* If the court concludes that arguable claims exist, the court must appoint new appellate counsel to represent the defendant in his appeal. *Id.*

{¶ 21} This court has independently reviewed the record under the *Anders* procedure. We agree with counsel's conclusion that the proceedings below were free of error prejudicial to appellant and that no grounds exist to support a meritorious appeal. Therefore, we grant counsel's motion to withdraw from the case. For the reasons that follow, we affirm the judgment of the trial court.

## V. Appellant's Proposed Assignment of Error

{¶ 22} THE TRIAL COURT ERRED IN GRANTING APPELLEE LUCAS COUNTY CHILDRENS SERVICES PERMANENT CUSTODY AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## VI. Standard of Review

{¶ 23} A reviewing court will not overturn a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re Alyssa C.,* 153 Ohio App.3d 10, 2003-Ohio-2673, 790 N.E.2d 803, ¶ 13 (6th Dist.).

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1213 (1984) .

{¶ 24} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. Clear and convincing evidence is "more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986).

{¶ 25} Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re Alyssa C.* at ¶ 13.

### VII. Permanent Custody Framework

{¶ 26} A parent's right to raise her child is a fundamental right. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *In re C.F.,* 113 Ohio

7.

St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 28. The interest in the care, custody, and control of one's children is "one of the oldest of the fundamental liberty interests recognized in American law." *In re K.H.* at ¶ 39, citing *Troxel,* 530 U.S. at 65. Terminating the right to raise one's children strikes at the core of the parent-child relationship. Therefore, parents "must be afforded every procedural and substantive protection the law allows." *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶ 27} A juvenile court may award permanent custody of a child to a public children services agency where the court finds, by clear and convincing evidence, the existence of one of the four factors listed in R.C. 2151.414(B)(1)(a) through (d) and that it is in the best interest of the child to grant permanent custody to the agency. *In re C.J.,* 6th Dist. Lucas No. L-13-1037, 2013-Ohio-3056, ¶ 12; R.C. 2151.414(B)(1).

### VIII.  Analysis

{¶ 28} Here, the trial court relied upon R.C. 2151.414(B)(1)(a) which requires a finding that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."  R.C. 2151.414(E) instructs a court to "enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" where it finds by clear and convincing evidence that "one or more" of the factors listed under R.C. 2151.414(E) exist.

8.

**{¶ 29}** Here, the juvenile court found that the factors set forth in R.C. 2151.414(E)(1), (2) and (11) were proven by clear and convincing evidence as they relate to appellant. Those sections are set forth below in the left column. The juvenile court's findings as to each provision are set forth in the right column.

| R.C. 2151.414(E) | The Juvenile Court's Findings of Fact |
|---|---|
| (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. | Appellant had the opportunity, but failed, to complete case plan services, including substance abuse treatment and mental health services with respect to T.S. The court found the following evidence persuasive: appellant was "non-compliant with providing requested drug screens and attending group and individual sessions;" appellant was "unsuccessfully discharged from substance abuse treatment at Unison in March, 2015" and was not "adequately engaged in mental health services to address trauma issues related to her mental health." The court also found that appellant's housing was "unstable" in that she was currently living at a shelter and had been recently evicted. In sum, the court concluded that appellant "has not successfully engaged and completed case plan services and has not remedied the conditions that caused the child to be removed from the home." |
| (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within | The Court heard evidence that appellant was diagnosed with severe depression for which she was prescribed medications. The court found that appellant's emotional and mental health is severe and is anticipated to last for at least a year following. The court also found that appellant "has a significantly long history |

9.

| | |
|---|---|
| one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.  * * * | abusing substances and that she has been unable to adequately maintain a sober lifestyle for a significant period of time." |
| (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.  * * * | The Court accepted evidence that appellant had her parental rights involuntarily terminated with respect to five siblings of T.S. in Michigan and in Lucas County, Ohio.  The court concluded that appellant failed to put forth any evidence, much less clear and convincing evidence, that despite those terminations, she was able to provide a legally secure permanent placement for T.S. |

{¶ 30} Through counsel, appellant argues that the termination of her parental rights was against the manifest weight of the evidence.

{¶ 31} We disagree.  We conclude that there is competent, credible evidence in the record supporting a firm conviction or belief that appellant had the opportunity but failed to complete case plan services; that she suffers from chronic chemical dependency that is so severe as to render her unable to provide an adequate permanent home for T.S. at the time of judgment and, as anticipated, within one year after the hearing; and that she previously had her parental rights terminated with respect to five siblings of T.S.

10.

{¶ 32} Under R.C. 2151.414(B)(1)(a), the applicability of "any one" of the (E) factors establishes a finding that the child cannot be placed with her parents within a reasonable time or should not be placed with her parents. *See In re C.J.,* 6th Dist. Lucas No. L-13-1037, 2013-Ohio-3056, ¶ 28. Here the juvenile court found clear and convincing evidence of three "E" factors. We sustain those findings.

{¶ 33} Next, we evaluate the second prong, whether an award of permanent custody is in the best interests of the child. R.C. 2151.414(D)(1) provides:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

11.

consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 34} In its judgment entry, the trial court relied upon the following evidence in finding, by clear and convincing evidence, that it was in T.S.'s best interest to grant permanent custody to CSB: (1) that T.S. was young and had been removed from appellant near the time of her birth; (2) that she was in need of legally secure placement that could not be achieved without a grant of permanent custody to CSB so that she might be adopted; (3) that appellant's parental rights had been terminated as to five of T.S.'s sibling; (4) that the caseworker and GAL recommended that an award of permanent custody was in T.S.'s best interests; and (5) that appellant had failed to consistently engage in case plan services.

12.

**{¶ 35}** We have reviewed the record and find competent, credible evidence exists to support the trial court's findings under R.C. 2151.414(D)(1) to establish a firm belief or conviction that an award of permanent custody to CSB is in the best interest of the child.

## IX.  Conclusion

**{¶ 36}** We conclude that the trial court's decision to award permanent custody of T.S. to CSB is not against the manifest weight of the evidence. Appellant's proposed assignment of error is not well-taken. Appointed counsel's motion to withdraw is granted. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Stephen A. Yarbrough, P.J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.