**[Cite as *In re D.T.*, 2020-Ohio-2968.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re D.T.

Court of Appeals No. L-20-1019

Trial Court No. JC 19273576

**<u>DECISION AND JUDGMENT</u>**

Decided: May 15, 2020

* * * * *

Laurel A. Kendall, for appellant.

Bradley W. King, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant-mother, M.T.[1], appeals the December 31, 2019 judgment of the

Lucas County Court of Common Pleas, Juvenile Division, which terminated her parental

---

[1] Despite reasonable efforts, the biological father of D.T. was not identified during the
course of the proceedings.

rights and granted permanent custody of D.T. to Lucas County Children Services (LCCS).

{¶ 2} The pertinent facts are as follows. LCCS was granted temporary custody of D.T. days after her birth in March 2019; D.T. was placed in foster care. The March 18, 2019 complaint in dependency and neglect alleged that in 2011, while living in Michigan, appellant had a child removed from her custody at birth due to her threats to kill the baby. The child was eventually returned but her parental rights were terminated in July 2013, after the child was found to be physically abused. It was further alleged that appellant had lost custody of two additional children. The complaint also alleged that appellant had mental health concerns.

{¶ 3} The original case plan was filed on April 3, 2019, and required that appellant complete a diagnostic assessment and follow all recommendations including support groups, counseling, and any prescribed medications and that she complete parenting classes with an interactive component. The goal of the case plan was reunification.

{¶ 4} On April 29, 2019, D.T. was found to be a dependent child and temporary custody was awarded to LCCS. On October 29, 2019, LCCS filed a motion for permanent custody. A hearing on LCCS' motion for permanent custody was held on December 10, 2019. Just prior to commencement, appellant left the courtroom. Counsel indicated that appellant was uncomfortable and waived her appearance.

{¶ 5} The family's LCCS caseworker testified that she was assigned to the case in March 2019, right after D.T. was born. The caseworker stated that the case was opened

2.

due to appellant leaving the hospital following D.T.'s birth against medical advice and a report they received that appellant had a history of parenting concerns. The caseworker stated that she investigated the allegation and discovered that appellant had lost custody to three prior children: one in St. Louis, one in Michigan, and one in Toledo.

{¶ 6} Following agency involvement, a case plan was opened offering appellant a diagnostic assessment and requiring she maintain employment and stable housing. The caseworker noted that she was concerned about the results of the assessment because she had observed appellant shut down and walk away from stressful situations. The caseworker testified that appellant, on at least three or four occasions and out of frustration, told her she would just sign her rights over and be done with the process.

{¶ 7} The caseworker stated that appellant completed the assessment, parenting classes, and had employment and stable housing. Her remaining concerns centered on appellant's mental health; LCCS referred appellant for a psychological evaluation which she completed over eight sessions from July-September 2019. The evaluation took more time than usual because appellant would walk out during the session and then it would need to be rescheduled. The evaluation report indicated that appellant did not have the "adequate emotional resources or sufficient skills to parent her children independently." It further stated that with more "direction and intervention" appellant's skills might improve. The report was admitted into evidence.

{¶ 8} The caseworker testified that appellant was not "forthcoming" during the process and when the report was finished appellant stated that she would not follow any

3.

of the recommendations, that she was being punished, and that it was unfair.  Appellant called the caseworker the next day and stated that she reconsidered and wanted to participate in the recommended services.  Such recommendations included therapies and possible medication to help appellant regulate her mood and emotions.  The caseworker stated that appellant did complete a diagnostic assessment on October 11, 2019, but that she again was not "forthcoming."  Ultimately, it was recommended that appellant attended therapy; appellant would not complete the psychiatric evaluation necessary to prescribe medication.

{¶ 9} The caseworker testified that appellant has failed to acknowledge or address her mental health issues; she completely shuts down or gets very angry or defensive. The caseworker stated that this causes concern because appellant cannot regulate her emotions.  The caseworker stated that during her psychological assessment, appellant became frustrated and broke glass lights in the bathroom.

{¶ 10} The caseworker stated that her major concern is that after all the services offered to appellant, and in light of the similar concerns involving appellant's three other children, she has not been able to remedy the issues.  The caseworker expressed that there is a difference between technical compliance with the case plan versus actual change.

{¶ 11} Regarding visitation, the caseworker testified that appellant was not consistent.  Initially, appellant was visiting D.T. two days per week for four hours. Appellant requested that it be reduced to one day a week for one hour because she was

4.

going back to work as a home health aide. The caseworker stated that appellant would frequently call and say she was going to be late, or cancel, or leave early.

{¶ 12} The caseworker indicated that LCCS has found no relatives to care for D.T. No father had been identified. The caseworker testified that she believed an award of permanent custody to LCCS was in D.T.'s best interests because of appellant's "past history of losing three children to the same issues as [the caseworker was] working with her on and not being able to correct those issues." The caseworker stated that appellant was closed off and not willing to work to correct the issues.

{¶ 13} During cross-examination, the caseworker agreed that appellant completed the case plan requirements. She stated that appellant was supposed to begin therapy following her October 2019 assessment; she attended one session, canceled the next one and failed to contact her counselor to reschedule. The caseworker acknowledged that appellant did "decent" during her visits with D.T. The caseworker explained that appellant feeds D.T. and changes her diaper but does not seem bonded, or have an emotional connection with her. Further, if appellant was "corrected" or any parenting suggestions were made she would get upset and leave.

{¶ 14} The caseworker testified that appellant has maintained appropriate housing during the course of the proceedings and completed the parenting program. The caseworker clarified that appellant did not complete the interactive portion of the parenting program because appellant felt that she did not need to be observed.

{¶ 15} The caseworker was questioned about appellant leaving the hospital against medical advice following the birth of D.T. The caseworker testified that appellant had explained that she needed to get home to her children who were being cared for by her sister. This was not true as appellant did not have custody of any of her children and her sister is deceased. The caseworker testified that D.T. is doing very well in her foster home and there is a potential for permanency there.

{¶ 16} The court-appointed special advocate (CASA) for D.T. testified next regarding her reports and recommendations. The CASA stated that she observed appellant on several occasions and she appeared very "distant" and uncomfortable talking about the case. During appellant's interactions with D.T., the CASA stated that she was disconnected, not emotionally bonding, and looking at what was going on in the visitation room. The CASA further testified that despite her urging, appellant refused to look at the psychological evaluation. The CASA recommended that it was in D.T.'s best interest to award permanent custody to LCCS. Her reports were admitted into evidence.

{¶ 17} After the close of the testimony and following a court recess, the court granted LCCS's motion for permanent custody of D.T. finding that despite LCCS' reasonable efforts, D.T. could not and should not be returned to her parents and that it was in her best interests that permanent custody be awarded to LCCS. The court based its decision as to the father under R.C. 2151.414(E)(10), and as to appellant, 2151.414(E)(1), (2), (4), (11) and (16). These finding were reflected in the trial court's

6.

December 31, 2019 judgment entry from which this appeal was taken. Appellant now raises the following assignment of error for our consideration:

> 1. The trial court's finding that LCCS proved by clear and convincing evidence that the minor child herein could not be returned to appellant pursuant to R.C. 2151.414(E)(1), (2), (4), and (11) is supported by insufficient evidence, and/or is against the manifest weight of the evidence.

{¶ 18} In appellant's sole assignment of error, she contends that the court's judgment was against the weight of the evidence where appellant completed the case plan services, was employed and maintained stable housing, and where the state failed to provide evidence on the record as to why appellant's other children were removed from the home. We note that in order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id*.

7.

{¶ 19} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 20} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child:

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 21} R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with

8.

either parent if any of 16 factors are met. Here, as to appellant the trial court found that R.C. 2151.414(E)(1), (2), (4), (11) and (16) applied. These sections provide:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

\* \* \*

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

\* \* \*

(16) Any other factor the court considers relevant.

{¶ 22} In support of her argument that competent, credible evidence does not support the trial court's findings as to R.C. 2151.414(E)(1), that the conditions which caused the removal were not remedied, appellant relies on a case from this court where we found that the record lacked an explanation as to why the child was initially removed from the home; thus, it could not be determined whether the conditions had not been remedied. *In re Alyssa C.*, 153 Ohio App.3d 10, 2003-Ohio-2673, 790 N.E.2d 803 (6th

Dist.). In the present case, unlike *Alyssa C.*, the record supports the finding that appellant's mental health was the predominant reason for the removal of D.T. The court concluded that appellant failed to address the concerns by prolonging the psychological assessment process, refusing to review the results, and, though initially agreeing to counseling, failing to follow through with sessions.

{¶ 23} As to R.C. 2151.414(E)(2), appellant contends that there was not enough time allotted for a true assessment of appellant's potential for improvement of her mental health. The court's and LCCS' concern was appellant's failure to even acknowledge that she had mental health issues.

{¶ 24} Next, appellant asserts that the lack of commitment factor, R.C. 2151.414(E)(4), was not proved by clear and convincing evidence. Appellant argues that her statements about signing over her parental rights were borne out of frustration over the proceedings and that she never followed through. Further, regarding visitation, appellant states that she requested that her visits be reduced due to returning to work and she should not be penalized for needing full-time employment to support herself and her child.

{¶ 25} Analyzing this factor, the court did not mention appellant's need to reduce visitation; rather, the court relied on the testimony that appellant would leave visits early if she got frustrated, she frequently arrived late to visits, and she canceled some altogether. The court also noted appellant's refusal to address her mental health concerns and her statements about signing over her parental rights.

11.

{¶ 26} Appellant next takes issue with the court's R.C. 2151.414(E)(11) finding that appellant lost custody of three other children. Appellant argues that there is no evidence as to why or whether the losses were permanent, temporary, or legal, or whether they were involuntary. Initially we note that appellant left the courtroom prior to the start of the hearing, returning only to hear the court's decision, and does not contest her absence on appeal. R.C. 2151.414(E)(11) placed the burden on appellant to essentially rebut a presumption, by clear and convincing evidence, that because her parental rights were involuntarily terminated as to other children, she is not a suitable parent for additional children. *See In re D.C.*, 6th Dist. Lucas No. L-17-1121, 2017-Ohio-8728, ¶ 40.

{¶ 27} During the course of the proceedings and at the hearing, LCCS presented evidence that appellant permanently lost custody of D.T.'s sibling in Michigan. The child was initially removed due to appellant hearing voices telling her to kill the child. Later, after regaining custody the child was physically abused and removed permanently. Though unclear as to the exact circumstances, during the course of the proceedings appellant acknowledged that she did not have custody of her other two children. We cannot conclude that the court's findings as to this factor were erroneous.

{¶ 28} The final factor relied upon by the court was R.C. 2151.414(E)(16). The court generally concluded that because appellant has lost custody of three other children, including permanent custody, and that she is clearly unwilling to even "begin to address her mental health" permanent custody of D.T. to LCCS was in D.T.'s best interests.

12.

These findings are supported by the record. Based on the foregoing, we hold that the trial court's findings under R.C. 2151.414(E) are not against the manifest weight of the evidence.

{¶ 29} We further find that the court did not err in finding that the award of permanent custody to LCCS was in D.T.'s best interests under R.C. 2151.414(D). The court noted that D.T. had no relationship with appellant, they did not appear to have bonded, and D.T. had been doing very well living in the home where she had been placed since birth. The court concluded that D.T. needed a secure, permanent placement.

{¶ 30} Based on the foregoing, we find that the trial court's judgment awarding LCCS permanent custody of D.T. is supported by sufficient evidence and is not against the weight of the evidence. Appellant's assignment of error is not well-taken.

{¶ 31} On consideration whereof, this court finds that substantial justice was done the party complaining. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.