OPINION
{¶ 1} Appellant, Lori Faulk, appeals from a Columbiana County Juvenile Court judgment terminating her parental rights to her three children.
 {¶ 2} Appellant is the mother of Wilbert Jr., Nicholas (d.o.b. 12/16/1989), Paul (d.o.b. 2/3/1995), and Brittany (d.o.b. 11/21/1998). Wilbert, Jr. is now emancipated and is no longer involved in this case. The children's father, Wilbert Faulk, Sr., has voluntarily surrendered all parental rights. (March 14, 2002 Judgment Entry).
 {¶ 3} The children began their long history with appellee, the Columbiana County Department of Job and Family Services, on March 1, 2000. Appellee filed a complaint alleging that Nicholas was an abused child as a result of injuries he sustained allegedly at the hands of his father. Appellant appeared at the adjudicatory hearing and stipulated to a finding that the children were dependent. Before the case proceeded to a dispositional hearing, Paul was riding his bicycle in downtown East Liverpool with Nicholas, unsupervised, and was hit by a truck. Immediately after this incident, the court granted an emergency order of removal of the children from their parents' home.
 {¶ 4} Appellee subsequently established case plans with the goal of reunification. The court conducted several review hearings at which appellant appeared but the children's father did not.
 {¶ 5} Appellee filed several motions for permanent custody starting on August 3, 2001. In response, appellant filed motions to reunite with the children. The parties resolved the first few motions by reaching agreements concerning expanded visitation while the children remained in appellee's custody.
 {¶ 6} Appellee's third motion for permanent custody came for a hearing on the merits on June 1, 2004. The trial court found that appellant had made significant efforts to comply with her case plan requirements. It also noted that appellant divorced the children's father when he refused to comply with any of the case plan goals. However, it also found that appellant had failed to meet several of the goals, including failing to demonstrate a bonded relationship with her children, failing to supervise them at visitations, and failing to locate suitable day care for them. Importantly, the court found that appellant also failed to comply with the requirements that the father not be permitted in her house and that she maintain a drug-free home. Finally, the court noted that the children have been in appellee's care for over four years and need some permanency in their lives. Therefore, the court terminated appellant's parental rights and granted permanent custody to appellee.
 {¶ 7} Appellant filed her timely notice of appeal on July 8, 2004.
 {¶ 8} It should be noted that appellee has failed to file a brief in this matter. Therefore, we may accept appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 9} Appellant raises a single assignment of error, which states:
 {¶ 10} "The termination of parental rights requires that a clear and convincing evidentiary standard be met to comply with theFourteenth Amendment to the United States Constitution."
 {¶ 11} Appellant argues that appellee did not show by clear and convincing evidence that one of the R.C. 2151.414 factors applied to her. She points to the testimony of the guardian ad litem (GAL) and several social workers for support. Appellant points to testimony from these witnesses that demonstrated she utilized social and rehabilitative services, always tested negative on drug tests, showed willingness to follow her case plan, and completed parenting classes.
 {¶ 12} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, citing Stanley v. Illinois (1972), 405 U.S. 645, 651,92 S.Ct. 1208, 31 L.Ed.2d 551. However, this right is not absolute. In reSims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 13} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 14} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613.
 {¶ 15} Additionally, according to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 16} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 17} "* * *
 {¶ 18} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. * * *"
 {¶ 19} This is where appellant focuses her argument. She contends that appellee did not demonstrate by clear and convincing evidence that one of the R.C. 2151.414(E) factors applied to her. However, appellant fails to consider R.C. 2151.414(B), which provides:
 {¶ 20} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 21} "* * *
 {¶ 22} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 23} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 24} The children in this case have been in appellee's temporary custody for well over 12 months of a consecutive 22-month period. Appellee first gained emergency custody of the children in March 2000. Since that time, they have remained in appellee's custody. As the trial court noted, these children need some permanency in their lives. They have spent considerable amounts of their young lives in foster care. Thus, since the children fall under R.C. 2151.414(B)(1)(d), the trial court did not abuse its discretion in this respect.
 {¶ 25} Furthermore, the court had to consider whether it was in the children's best interest that it grant their permanent custody to appellee. In considering the children's best interests, the court was to consider the factors listed in R.C. 2151.414(D), which include, but are not limited to:
 {¶ 26} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 27} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 28} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 29} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 30} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 31} At the hearing, the court heard the following evidence regarding these factors.
 {¶ 32} As to the first factor, GAL Marybeth Peters testified that the children are doing very well in their foster homes. (Tr. 14). The boys are with the same foster family who would like to adopt them. (Tr. 14). And Brittany is with a foster family that includes seven other girls and would like to adopt her. (Tr. 14). Robin Stock, one of the social workers involved with the family, expressed similar opinions. She stated that the children have adjusted well since being in foster care and have bonded with their foster parents. (Tr. 142). Shelly Nieder, a case manager for Nicholas and Paul, testified that the boys are doing well in their foster home. (Tr. 220, 222). She stated that they are doing well in school and Paul has made a lot of friends. (Tr. 220, 222). Brittany's foster mother, Marilyn Van Pelt, testified that Brittany is a happy child and is very bonded with the other children in her home, which include her six daughters and one other foster child. (Tr. 227).
 {¶ 33} There was also some testimony about the children's relationship with appellant. Nieder testified that around visitation times, Paul would have nightmares, act out, and say that he was ill. (Tr. 217). As a result, visitations ceased between Paul and appellant in the summer of 2002. (Tr. 217). Additionally, Van Pelt testified that after visits with appellant, Brittany acts like a different child. (Tr. 228). She stated that Brittany becomes very quiet and upset. (Tr. 228-29). Furthermore, Melissa Daily, a visitation supervisor, testified that during visitations there is little physical contact between appellant and her children. (Tr. 235). She also stated that there is a lack of concern and interest on both appellant's side and the children's side at the visitations. (Tr. 235).
 {¶ 34} The boys expressed their wishes to the GAL, Stock, Nieder, and Heather Guthrie. The GAL noted that Brittany has been removed from appellant for so much of her life that she does not really understand that appellant is her mother. (Tr. 16). The boys expressed to the GAL that they would like to be adopted by their foster family. (Tr. 16). Stock testified that the boys have indicated to her that they do not want to return home. (Tr. 141). She also stated that after visits with appellant, Brittany demonstrates traumatic behaviors. (Tr. 141). Nieder testified that Paul has expressed that he is afraid to return to appellant's home because he is afraid his father may be there. (Tr. 221-222). Nieder also testified that Nicholas has told her that while he cares for his family, he does not wish to return to appellant's home. (Tr. 224). He has told Nieder that he does not feel comfortable being in the environment of appellant's home. (Tr. 224). She also noted that both boys indicated a desire to remain with their foster family. (Tr. 224). Finally, Nicholas' and Paul's counselor, Guthrie, testified that both children have expressed a desire to stay with their foster family. (Tr. 274-75). She stated that Nicholas has told her that he feels that if he lived with his biological family he would not be able to make good choices in his life. (Tr. 274).
 {¶ 35} The third factor, the children's custodial history, was discussed above. In addition to the dates of the children's removal and how many years they have been in appellee's temporary custody, it is also interesting to note what percentage of their young lives the children have spent out of appellant's home. The GAL testified that Nicholas has spent 29 percent of his life out of his mother's care, while Paul has spent 45 percent of his life, and Brittany has spent 76 percent of her life away from appellant's home. (Tr. 25).
 {¶ 36} As to the fourth factor, Stock testified that appellee's opinion was that the children should not be returned to appellant anytime in the near future. (Tr. 141). The testimony indicated that the boys' foster family expressed an interest in adopting the boys. (Tr. 14). And Van Pelt testified that she would consider adopting Brittany if appellee had permanent custody of her. (Tr. 233).
 {¶ 37} As to the final factor, none of the factors listed in R.C.2151.414(E)(7) to (11) apply in this case.
 {¶ 38} In addition to the statutory best interest factors, other relevant evidence was presented.
 {¶ 39} Many witnesses testified about appellant's unwillingness or inability to keep the children's father out of her home. One of the main reasons the children were adjudicated dependent was the allegations of physical and sexual abuse at the hands of their father. When Wilbert, Sr. refused to cooperate with any part of the case plans and subsequently surrendered his parental rights, appellant divorced him. After the divorce, it has been a condition of the case plans for appellant to keep Wilbert, Sr. out of her home. But she has failed to do so.
 {¶ 40} Nearly every witness who visited appellant's home testified that Wilbert, Sr. was there several times. Stock testified that on July 8, 2003, she went to appellant's home and Wilbert, Sr. was there sitting on the couch. (Tr. 43). When she walked in the room, he got up and left. (Tr. 43). And when she asked appellant who the man was, appellant lied and said she did not know who he was. (Tr. 43). Upon further questioning, appellant admitted that it was Wilbert, Sr. (Tr. 43). The next day, social worker Amy Brestelli saw Wilbert, Sr. sitting on appellant's front porch. (Tr. 254). On July 31, 2003, Stock stopped by appellant's house while she was not home and found appellant's adult daughter Tiffany sitting on the front porch with Wilbert, Sr. (Tr. 46). As recently as April 7, 2004, Stock found Wilbert, Sr. at appellant's home. (Tr. 101). On this date, Stock was accompanied to the house by Officer Shawn Long. Officer Long testified that since that day he had been past appellant's house numerous times and Wilbert, Sr. had been there five days a week. (Tr. 177). Chris Shaw, a social worker, had driven past appellant's house numerous times and observed Wilbert, Sr. sitting on the porch. (Tr. 181).
 {¶ 41} Appellant's adult daughters Tiffany and Amber reside with appellant. Tiffany has a baby. When asked why Wilbert, Sr. has been at her house, appellant has stated that he comes to visit his grandchild. (Tr. 82, 289-290). Finally, appellant testified that it is hard for her to keep Wilbert, Sr. away from her home. (Tr. 289).
 {¶ 42} Additionally, as part of her case plan goals, appellant was to seek a civil protection order to keep Wilbert, Sr. away from her home. (Tr. 42). However, she failed to do so and made excuses to social workers who inquired why she had not done so. (Tr. 42, 80).
 {¶ 43} Furthermore, Stock testified that appellant has indicated she does not believe the children's allegations that Wilbert, Sr. abused them. (Tr. 38). And Carrie Mitchell, a foster care worker, also testified that appellant expressed disbelief that Wilbert, Sr. abused the children. (Tr. 203).
 {¶ 44} Another problem that came out at the hearing was that appellant has failed to keep a drug-free home as required by the case plan. Stock testified that when she went to appellant's home on April 7, 2004, with Officer Long, appellant took her upstairs. There she smelled a strong odor of marijuana when appellant opened the door to Tiffany's bedroom. (Tr. 102). Stock informed Officer Long of what she smelled upstairs. (Tr. 102). Officer Long went upstairs and one of appellant's daughters gave him a cigarette package with marijuana roaches in it. (Tr. 171-73). Tiffany and Amber were two of the people smoking marijuana. (Tr. 114). Appellant told Stock that she did not know that her company was using drugs. (Tr. 102). Stock then looked to see where Tiffany's baby was at. (Tr. 103). She found him asleep in a portable crib next to where Officer Long found a marijuana roach. (Tr. 103, 170). Additionally, other drug users have been present in appellant's home at other times. (Tr. 89, 126).
 {¶ 45} Finally, the GAL and Stock both testified that they believed it to be in the children's best interests for the court to grant permanent custody to appellee. (Tr. 16, 144).
 {¶ 46} There was some evidence of positive improvements appellant has made in her life. Stock testified that appellant has complied with many aspects of her case plans including attending parenting classes, testing negative on random drug screens, maintaining consistent employment, attending all reviews and meetings requested of her, divorcing Wilbert, Sr., paying back money from welfare fraud, and attending counseling. (Tr. 145-46).
 {¶ 47} Nonetheless, the improvements appellant has made, while commendable, were not enough to change the GAL's or Stock's opinions that it was in the children's best interests to grant permanent custody to appellee. The focus seemed to be on appellant's inability or unwillingness to keep her ex-husband away from her home. Furthermore, the evidence suggests that appellant does not believe her children's allegations of sexual and physical abuse at their father's hands because if she did, she would not allow him in her home and around her grandchild. And while appellant herself has remained drug-free, she has demonstrated a problem with keeping her home free of drugs and drug users. Additionally, the testimony revealed that the children are more bonded and happy with their foster families than with appellant. And they have been out of appellant's care for over four years now.
 {¶ 48} Given this evidence, we cannot conclude that the trial court abused its discretion in granting appellee's motion for permanent custody. Thus, appellant's assignment of error is without merit.
 {¶ 49} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.