[Cite as *In Re S.S.*, 2018-Ohio-2790.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

## IN RE: S.S.

## ALLEGED DEPENDENT CHILD

**OPINION AND JUDGMENT ENTRY**
Case No. 18 MA 0004

Civil Appeal from the
Court of Common Pleas, Juvenile Division of Mahoning County, Ohio
Case No. 2015 JC 197

**BEFORE:**
Kathleen Bartlett, Gene Donofrio, Cheryl L. Waite, Judges.

**JUDGMENT:**
Affirmed

*Atty. Lori Shells Simmons,* 222 West Federal Street, 4th Floor, Youngstown, Ohio 44503, for Appellee and

*Atty. Rhonda Santha,* 6401 State Route 534, West Farmington, Ohio 44491, for Appellant.

Dated: June 29, 2018

**Bartlett, J.**

{¶1} This is an expedited appeal by natural mother-Appellant, B.S., from the trial court's December 8, 2017 judgment entry which terminated her parental rights and granted permanent custody with the power of adoption to Mahoning County Children Services Board (MCCSB). The issues this court must address are 1) whether the trial court violated Appellant's right to due process of law by failing to appoint her a separate psychological expert to assist her in rebutting Appellee's psychological testimony; 2) whether the trial court's December 8, 2017 judgment was against the manifest weight of the evidence in its factual finding that Appellant's mental health was so severe as to disable her parenting of minor child; and 3) whether the trial court incorrectly used the preponderance of evidence standard of proof instead of the required clear and convincing standard for termination of parental rights findings.

{¶2} For the following reasons, Appellant's three assignments of error are without merit. Accordingly, the judgment of the juvenile court is affirmed.

### Facts and Procedural History

{¶3} On February 11, 2015, the minor child at issue was placed in the care of Appellee-MCCSB pursuant to Ohio Juvenile Rule 6 following allegations that the Appellant had thrown the minor child twice into his crib. At the time Appellant and the minor child were residing with maternal grandparents when a domestic dispute occurred between Appellant and maternal grandfather, resulting in the removal of the child from the home.

{¶4} On March 13, 2015 a case plan was established that indicated that Appellant had a history of substance abuse and mental health concerns. Appellant did not have any income at that time, and was residing with her parents, where she could not remain long term. There had been domestic violence between Appellant and her parents, as well as Appellant and her estranged husband. Appellant reportedly threw her son into his crib during a fit of anger which led to the removal of the child. Pursuant to the Case Plan Appellant was required to: complete a psychological evaluation; complete a mental health assessment and follow any and all recommendations of the

treatment provider; complete parenting classes at MCCSB; complete alcohol and other drug (AOD) assessment, following all recommendations; submit to random drug screens on request; and provide safe and stable housing.

{¶5} Trial testimony established that the minor child was ill for the first several months while in foster care, with diagnoses including RSV, viral bronchiolitis, ear infections, and other viral infections. The minor child was hospitalized in April 2015 due to respiratory problems associated with viral infection. The minor child subsequently had tubes put in his ears. He also had his tongue clipped on June 24, 2015, and showed progress with eating and speech following the surgery.

{¶6} On July 6, 2015 a domestic violence incident occurred between Appellant and maternal grandmother, resulting in Appellant's incarceration.

{¶7} On August 3, 2015, the Juvenile Court conducted an adjudicatory hearing. For said hearing, Appellant was transported from county jail to the court due to the fact that she was incarcerated on the domestic violence charge against maternal grandmother as the alleged victim. Additionally, she was serving time for a probation violation on an assault charge from 2013. At said hearing, Appellant stipulated to an adjudication of dependency, therefore, the minor child was adjudicated dependent by the juvenile court.

{¶8} On September 1, 2015, Appellant was discharged from jail and went to Turning Point Crisis Unit from September 2, 2015 to September 9, 2015.

{¶9} On September 14, 2015, Appellant was "pink-slipped" to St. Elizabeth Hospital. Appellant returned to Turning Point Crisis Center upon discharge.

{¶10} On November 10, 2015, MCCSB filed its first Motion to Extend Temporary Custody, noting that Appellant had not made any significant or measurable progress on her case plan. MCCSB intended to move for permanent custody if Appellant did not show progress on her case plan. MCCSB stated that Appellant was required to: engage in mental health treatment and be able to show she is complying with treatment; complete an AOD assessment and follow recommendations of that assessment; complete a psychological evaluation with Dr. Harvey Kayne; establish safe and appropriate housing; demonstrate that she has learned skills necessary to care for a child with special medical needs by utilizing those skills during regular visits; complete parenting classes; and visit with the child on a regular basis.

{¶11} In January 2016 Appellant moved into a home with her boyfriend in Lowellville. The home was in need of repairs to make it safe for the minor child.

{¶12} On January 21, 2016, Appellant completed an assessment at Neal Kennedy Recovery Center. The assessment recommended Intensive Outpatient treatment for Appellant.

{¶13} On January 26, 2016 the juvenile court conducted a hearing on MCCSB's Motion to Extend Temporary Commitment. The juvenile court determined that reasonable efforts were made to prevent the need for placement and/or make it possible for the child to return home and/or finalize the permanency plan that is in effect. The juvenile court further noted that reasonable and diligent efforts were made by MCCSB to reunify Appellant and child. The efforts included: Appellant was granted the opportunity to complete parenting classes in five different series rather than the usual three; caseworker had attempted to assist Appellant with mental health and substance abuse treatment; Appellant was incarcerated during some of the time in question on a domestic violence charge and probation violations; Appellant was hospitalized twice at in-patient psychiatric facilities; and caseworker was sensitive to the absences and tried to work around them to assist Appellant.

{¶14} On March 19 & 20, 2016 Appellant had positive urine tests for alcohol and cocaine.

{¶15} Appellant entered the Neal Kennedy Recovery Clinic (NKRC) for a 28-day in-patient program which began April 22, 2016, and, thereafter, stepped down to an intensive outpatient program. However, Appellant was discharged from the intensive outpatient program because NKRC determined she was in need of mental health treatment before she could benefit from AOD treatment.

{¶16} On April 13, 2016, MCCSB filed a Motion to Modify Temporary Commitment to Permanent, alleging that the minor child had been in the temporary custody of MCCSB for twelve or more months of a consecutive twenty-two month period, and that it was in the best interest of the minor child to grant permanent custody of the child to the agency. The matter was scheduled for hearing on June 30, 2016.

{¶17} At the June 30, 2016 hearing, counsel for Appellant orally moved for a continuance to allow Appellant time to complete her case plan, indicating that Appellant had obtained a psychological assessment at Turning Point in the week prior to the

hearing. Counsel further argued that Appellant had been subjected to multiple psychological evaluations. The juvenile court noted that some of the evaluations either were initiated by Appellant or were in response to orders from other courts concerning Appellant's criminal charges. The juvenile court further stated that the current psychological evaluation conducted at Turning Point was necessary because Appellant failed or refused to engage in meaningful counseling, and must start the process again with an evaluation. Nonetheless, the juvenile court continued the trial to September 15, 2016.

{¶18} At the trial on September 15, 2016, counsel for Appellant orally moved for a continuance for the reason that the Guardian ad Litem did not timely file a report prior to the hearing. The juvenile court continued the trial to November 14, 2016.

{¶19} MCCSB withdrew the pending action upon realization that the two continuances extended beyond the time limits for the permanent custody requirements, and the failure to properly serve the father with hearing notice. MCCSB refiled the action and a permanent custody hearing was scheduled for December 27, 2016.

{¶20} The permanent custody trial began on December 27, 2016, and was conducted over a two-day period, ending on February 9, 2017. The court heard testimony from Dr. Harvey Kayne, Monique Brown of Neal Kennedy Recovery Clinic, Jennifer Mackovick of NKRC, Suzanne Rintala of Turning Point, the MCCSB caseworker, Lisa Kaneski, and the Guardian ad Litem (GAL), Cheryl Zebrasky.

{¶21} Dr. Harvey Kayne met with Appellant on two occasions, June 2015 and November 2015. The first meeting was conducted without any significant background information provided to Dr. Kayne. Said meeting consisted primarily of clinical testing. Dr. Kayne opined that Appellant was somewhat guarded, defensive, and trying to present herself in a positive light. Dr. Kayne believed that Appellant was exhibiting signs of "a well-established personality disorder with multiple symptoms of various types, all of which can act in consort to negatively impact [her] functions. In general and more specifically, her parenting." (Tr. 54). Dr. Kayne opined that the Appellant was functioning psychologically in an impaired manner, and recommended that she receive treatment, preferably with a practitioner well-versed in dealing with severely personality-disordered individuals. (Tr. 55-56).

{¶22} Two staff members from NKRC testified at trial as to the treatment

obtained by Appellant. The staff at NKRC testified that although Appellant attended the meetings and in-patient programs, they felt that her mental health issues limited her from fully taking in what she needed to take in from the NKRC treatment programs. (Tr. 107). As a result, NKRC staff felt that they could not meet the mental health needs of Appellant and referred her for mental health treatment. (Tr. 99-100, 106, 127-128, 134).

{¶23} Appellant engaged in counseling services at Turning Point on June 27, 2016. However, testimony revealed that between June 27 and the December trial date, Appellant only attended six out of twelve scheduled sessions (two of which had been cancelled due to the counselor, four of which were missed by Appellant). (Tr. 141, 147)

{¶24} The MCCSB caseworker, Lisa Kaneski testified that when the child came into custody, the case plan for Appellant consisted of: completing a mental health assessment and following any and all recommendations; completing a drug and alcohol assessment and completing any and all recommendations; establishing and maintaining safe and stable housing; attending weekly visitations and being able to show that she was able to provide for the child's needs and engage with the child appropriately in visits; and completing parenting classes. (Tr. 163-164). Ms. Kaneski testified that Appellant was in the process of an eviction from her current home, and that she did not complete the parenting classes although given additional opportunities to complete them. (Tr. 167-168). Ms. Kaneski further testified that although Appellant completed quite a bit of drug and alcohol treatment, Appellant was referred for mental health treatment from NKRC because that type of treatment was not available at NKRC. (Tr. 170). Ms. Kaneski reported that mental health treatment was really "hit or miss" with Appellant starting treatment somewhere but not finishing. (Tr. 171). Ms. Kaneski noted that Appellant had attended various service providers, including Canfield Counseling Center in February 2015, Turning Point Counseling in October 2015, Advanced Counseling Solutions in March 2016 (assessment was completed but no follow up treatment), and then Turning Point again in May/June 2016 (assessment completed June 27, 2016, counseling began July 25, 2016). (Tr. 172-176, 180-181, 186, 193). Appellant missed counseling appointments with Turning Point on July 21, August 8, August 19, and October 19, 2016. (Tr. 193). Appellant attended counseling sessions on July 25, November 3, November 8, and November 21, 2016. (Tr. 194). Appellant was assigned a new counselor at Turning Point, and missed a session with the new

counselor on December 8, 2016.  (Tr. 194).  Ms. Kaneski further testified that Appellant was referred by Turning Point for psychiatric services on July 12, and Appellant did not follow through with that referral.  (Tr. 194).  Ms. Kaneski opined that Appellant had not completed the mental health portion of the case plan.  (Tr. 195).

**{¶25}** Ms. Kaneski reported, relative to visitation with the minor child, Appellant had missed more visits than she had attended.  Appellant missed or had been late approximately fifty times over a twenty-one month period.  (Tr. 195-196).  Ms. Kaneski opined that Appellant had not completed the case plan regarding visitation.  (Tr. 198).

**{¶26}** The GAL testified that Appellant's mental health issues have never been truly addressed.  (Tr. 302).  She noted bizarre statements Appellant made, as well as behaviors observed by GAL and others monitoring visitation between Appellant and the minor child.  (Tr. 302-303.)  The GAL expressed concerns that the minor child has a disciplined schedule with medical appointments for his asthma issues, and Appellant failed to follow through with simple appointments with the GAL.  (Tr. 320-321).  The GAL testified that she believed it to be in the child's best interest to grant permanent custody to MCCSB.  (Tr. 303, 308, 321.)

**{¶27}** The juvenile court issued its Magistrate's Decision granting permanent custody with power of adoption to Appellee on May 31, 2017, with an Amended Magistrate's Decision on June 6, 2017.  Appellant filed Objections to the Magistrate's Decision, which were heard on November 1, 2017.  The juvenile court issued its Judgment Entry affirming the Magistrate's Decision on December 8, 2017.  Appellant filed the instant appeal alleging three assignments of error.

### First Assignment of Error

Appellant argues that the trial court violated Appellant's right to due process of law by failing to appoint her a separate psychological expert to assist her in rebutting Appellee's psychological testimony.

**{¶28}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion.  *In re Sims,* 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23.   An appellate court's review of a

Case No. 18 MA 0004

juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey,* 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665, ¶ 16.

{¶29} Appellant argues that the juvenile court violated her right to due process of law by failing to appoint a separate psychological expert to assist her in rebutting Appellee's psychological testimony. The Appellant did not motion the court, either written or orally, for a separate psychological expert to assist her in the permanent custody proceedings. In fact, Appellant's counsel in the permanent custody proceedings argued that Appellant should not have a psychological evaluation at all, and opposed an evaluation by a professional on contract with the Appellee. The juvenile court ordered Appellant to complete an evaluation with Dr. Harvey Kayne, and limited information was provided by MCCSB to Dr. Kayne prior to the first evaluation. (Tr. 11-12). The record demonstrates that Appellant attended various providers throughout the proceedings, but failed to follow through with treatment. Appellant never requested a separate psychological expert to be appointed on her behalf.

{¶30} The minor child came into custody of Appellee in February 2015. The permanent custody trial took place over two separate days on December 27, 2016 and February 9, 2017 respectively. Appellant had an extended period of time to complete the requirements of her case plan, which included mental health treatment among various other factors that were not completed in the case plan. Appellant failed to follow through with treatment, and moved between various providers during the pendency of the case before the juvenile court.

{¶31} Appellant relies upon *In re Brown,* 1st Dist. No. C-850878, 1986 WL 13385 (1986), where the court reversed the grant of permanent custody in that case based upon the denial of the mother's request for a continuance of the permanent custody trial and the appointment of a psychiatric expert to assist in the review and assessment of records. *Id.* at ¶¶ 1-2. The *Brown* Court held that the mother's mental health was the determinative factor in the determination of dependency and the recommendation of permanent custody. *Id.* at ¶ 2. The court in that case was reviewing the permanent custody determination pursuant to R.C. 2151.353(A)(4). The court in *In re B.G.*, 8th Dist. No. 81982, 2003-Ohio-3256, ¶ 22 adopted *Brown's* holding, with this clarification:

We are not holding that due process requires the appointment of a psychiatric expert in every permanent custody proceeding where a parent's mental health is made an issue. However, in this case, because the indigent parent's mental or emotional health was clearly the predominant issue from the outset and ultimately became the determinative issue, **and** because the parent made a timely request for such assistance, we hold that the assistance of a court-appointed psychiatric expert was mandated by the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution. [Emphasis added].

**{¶32}** Here, Appellant had a history of mental health issues that predated the minor child coming into the custody of MCCSB. Records produced from Turning Point demonstrated an admission of Appellant on September 18, 2014, presenting with symptoms of depression with suicidal ideations. Appellant was diagnosed with Mood Disorder NOS, Alcohol Abuse, Personality Disorder NOS. Appellant also had two psychiatric hospitalizations during the pendency of the case before the juvenile court. The record demonstrates that despite hospitalizations in the Crisis Unit, Appellant did not follow through with continuing mental health treatment. The record shows Appellant moved among multiple mental health providers, but failed to follow through with consistent treatment with any of them.

**{¶33}** The record and testimony outlined other factors that supported the juvenile court's determination including: inconsistent visitation with the minor child; deteriorating interaction between the minor child and Appellant during the case; intermittent employment; and the failure to complete parenting classes despite multiple additional opportunities offered to Appellant.

**{¶34}** The facts of this case do not demonstrate a last-minute request for a psychiatric expert as in the *Brown* case, *supra.* The facts herein demonstrate a long history of Appellant's untreated mental health issues that predated the removal of the minor child from Appellant's care. The facts also demonstrate multiple other facets of the case plan that were not completed by Appellant which supported the juvenile court's grant of permanent custody to MCCSB. During the pendency of the case before the

juvenile court, Appellant had multiple opportunities to obtain mental health treatment, and in fact went to various providers based on either her own volition or upon the orders of other courts involved in criminal proceedings with Appellant. Appellant failed to follow through. Appellant's evaluation by Dr. Kayne was conducted in June and November 2015, leaving substantial time prior to the permanent custody hearing, and at no time was a separate psychologist requested on behalf of Appellant. Appellant's due process rights have not been violated in this case, and the first assignment of error is overruled.

## Second Assignment of Error

Appellant argues that the trial court's December 8, 2017 judgment was against the manifest weight of the evidence in its factual finding that Appellant's mental health was so severe as to disable her parenting of minor child.

**{¶35}** The juvenile court's decision was based upon the two-prong test of R.C. 2151.414(B)(1)(d). The first prong was satisfied based upon the fact that the minor child had been in Appellee's custody in excess of 12 months of a 22-month consecutive period. As such, the relevant appellate review turns to whether permanent custody was in the best interest of the minor child. Where a manifest weight challenge is made on appeal, the appellate court looks at "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541. "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Id.* This standard of review as set forth in *Thompkins* has been extended to civil cases generally, *Eastley* at ¶ 17, and cases involving the termination of parental rights specifically. *See In re S. Children,* 5th Dist. No.2012–CA–00164, 2012–Ohio–6265. We cannot overturn the findings of the juvenile court if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. *In the Matter of Elliott,* 7th Dist. No. 03JE30, 03JE33, 2004-Ohio-388, ¶ 34, citing *In re Alyssa C.,* 153 Ohio App.3d 10, 2003-Ohio-2673, 790 N.E.2d 803, ¶ 13, *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.

{¶36} Pursuant to R.C. 2151.414(D), in determining the best interest of a child at a permanent custody hearing, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶37} Applying the factors to the facts in the underlying case, testimony demonstrated: that the interaction between Appellant and the minor child had deteriorated during the pendency of the case; that Appellant had missed numerous visitations; and Appellant was exhibiting bizarre behaviors in the presence of the minor child during visitation periods.

{¶38} As to the second factor, based upon the age of the minor child, he is too

young to express an opinion as he has been in the custody of MCCSB since he was twelve (12) months old. The GAL expressed an opinion and recommendation to the juvenile court, in favor of permanent custody to MCCSB.

{¶39} For the third factor, the custodial history of the minor child demonstrates that he has been in the custody of MCCSB for twelve or more months of a consecutive twenty-two-month period. The MCCSB caseworker testified that the minor child has been in his current foster home since November 2015. Ms. Kaneski further testified that the minor child is bonded to the foster parents. (Tr. 212-213). The child was removed from Appellant's care at the age of twelve (12) months and has now spent more of his life in the foster home than with Appellant.

{¶40} The fourth factor is the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. The underlying proceedings were extended, in part to grant Appellant additional time to work her case plan with MCCSB. Appellant failed to complete her case plan, and the testimony before the juvenile court revealed that very little progress had been made by Appellant despite the amount of extended time that she had to work her case plan. The minor child has been in the custody of MCCSB since February 2015 and is in need of a secure permanent placement.

{¶41} The final factor to review is whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child. None of the factors in R.C. 2151.414(E)(7) to (11) apply in this case.

{¶42} Based upon the review of the record, sufficient, credible evidence supports the juvenile court's finding that permanent custody is in the best interest of the minor child.

### Third Assignment of Error

Appellant argues that the juvenile court incorrectly used the preponderance of evidence standard of proof instead of the required clear and convincing standard for termination of parental rights findings.

{¶43} R.C. 2151.414(B)(1) requires the court to determine the best interest of the child by clear and convincing evidence. *Santosky v. Kramer,* 455 U.S. 745, 769, 102 S. Ct. 1388, 71 L.Ed. 2d 599 (1982). Clear and convincing evidence is evidence

that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Faulk,* 7th Dist. No. 04-CO-36, 2005-Ohio-1352, *citing In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). Based upon the evidence presented to the juvenile court, it cannot be concluded that the juvenile court abused its discretion in granting MCCSB's motion for permanent custody.

{¶44} The testimony of the MCCSB caseworker demonstrated that little progress had been made on Appellant's case plan toward reunification with the minor child. Appellant was not consistent with visitation, missing fifty visits over a twenty-one (21) month period; did not follow through with mental health treatment despite a history of mental health issues and two hospitalizations during the pendency of the case; Appellant's interaction deteriorated with the minor child as evidenced by her behaviors during the Hope House visits; Appellant had intermittent employment; and although she had attended drug and alcohol treatment, she was referred for mental health treatment which resulted in Appellant attending various providers but never following through with treatment.

{¶45} The GAL expressed concerns that Appellant had never truly addressed her mental health issues. The GAL observed bizarre statements and behaviors of Appellant, some of which occurred during visitation with the minor child. The GAL was also concerned about whether the Appellant would follow through with the minor child's schedule for doctor appointments and asthma treatment, since Appellant often missed appointments with the GAL and visitation times. The GAL testified that she believed it to be in the child's best interest to grant permanent custody to MCCSB. (Tr. 303, 308, 321.)

{¶46} Appellant relies upon *In re C.M.*, 9th Dist. No. 21372, 2003-Ohio-5040, which is distinguishable from the instant case. The court in that case noted that there was no evidence presented about the interaction and interrelationship between the minor child and mother, that visitations had increased in that case to involve unsupervised weekend visitations, and that only three visits had been missed. *Id.* at ¶ 3. In the instant case, there was significant testimony surrounding the deteriorating relationship between Appellant and the minor child, an overwhelming number of missed visits with the minor child, and bizarre, inappropriate behaviors that Appellant began demonstrating during the visits with the minor child. In addition, the *C.M.* court held that

the trial court had ignored the GAL recommendation which was not in favor of permanent custody of the minor child.  In the instant case, the GAL recommended permanent custody be granted to MCCSB.  The juvenile court applied the best interest factors in making its determination to grant permanent custody to MCCSB.

**{¶47}** The record below demonstrates clear and convincing evidence that permanent custody was in the best interest of the minor child.

**{¶48}** Thus, based on all of the above, the three assignments of error are without merit, and the judgment of the juvenile court granting permanent custody of the minor child to MCCSB with power of adoption is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.

Case No. 18 MA 0004

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

_____
**JUDGE KATHLEEN BARTLETT**

_____
**JUDGE GENE DONOFRIO**

_____
**JUDGE CHERYL L. WAITE**

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**